**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 6, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

CORBIN A. McNEILL; DORICE S. McNEILL,

Petitioners - Appellants,

v.

UNITED STATES OF AMERICA,

Respondent - Appellee.

No. 15-8095

Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 2:14-CV-00172-NDF)

Gordon B. Nash, Jr., Drinker Biddle & Reath LLP, Chicago, Illinois (Paul J. Hickey, Hickey & Evans, LLP, Cheyenne, Wyoming, and Gabriel G. Tsui, Leech Tishman Fuscaldo & Lampl, LLC, Oak Brook, Illinois, with him on the briefs), for Petitioners-Appellants.

Michael J. Haungs, Attorney, Appellate Section, Tax Division of the United States Department of Justice, Washington, D.C. (Caroline D. Ciraolo, Acting Assistant Attorney General, Tax Division, and Diana L. Erbsen, Deputy Assistant Attorney General, Tax Division, and Gilbert S. Rothenberg and Jacob Earl Christensen, Attorneys, Appellate Section, Tax Division of the United States Department of Justice, Washington, D.C., and Christopher A. Crofts, Of Counsel, United States Attorney, District of Wyoming, with him on the brief), for Respondent-Appellee.

Before **LUCERO**, **GORSUCH**, and **PHILLIPS**, Circuit Judges.

**GORSUCH**, Circuit Judge.

After commanding an attack submarine and eventually retiring from the Navy, Corbin McNeill pursued a second career as a utility company executive. It proved a much more lucrative line of work. When he approached his second retirement he found himself slated to receive an $18 million payment. And faced with the promise of a correspondingly prodigious tax bill, Mr. McNeill began fishing around for ways to ease the bite. Eventually, he came across a complicated little scheme suggested by some well-heeled tax advisors. At bottom, the idea was to transfer to Mr. McNeill losses that foreign debt holders had already suffered. Both sides had an incentive to deal: Mr. McNeill wanted to claim the losses as deductions against his income; the foreign debt holders wanted to transfer their assets for a slight premium over their current (and much reduced) market value because Mr. McNeill could use them to secure a tax advantage they didn't need. *See* Dep't of the Treasury, The Problem of Corporate Tax Shelters, at v (1999).

Of course, the deal had to be structured gingerly. Not least to avoid the appearance of any sale of the debt instruments when they transferred from the foreign debt holders to Mr. McNeill, for that risked revealing Mr. McNeill's true basis in them was quite low and his losses insignificant. So it is that his tax

2

advisors established a partnership (really a series of partnerships) to which the foreign debt holders contributed their underwater debt instruments and their basis in them, and to which Mr. McNeill contributed relatively small sums of money. As structured, Mr. McNeill owned over 90% of the relevant and final partnership. All so that when the partnership proceeded to sell the debt to third parties, it (rather than the foreign debt holders) could claim to realize the whole of the losses and Mr. McNeill could claim on his tax returns that his $18 million in income was offset by $20 million in losses — losses that, well, he never really suffered. In aid of the scheme, various accounting and law firms supplied opinion letters offering their views that it would withstand IRS scrutiny.

That it did not. When a partnership is employed in a tax avoidance scheme the government wishes to unwind, the IRS has historically followed a two step process prescribed by the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA). First and out of an apparent desire to avoid inefficiencies that might arise if it had to audit and adjust each partner's tax return separately, the IRS begins by adjusting whatever it deems misreported by the partnership at the partnership level and assigning a provisional overall penalty. *See* 26 U.S.C. §§ 6221, 6223(a)(2), 6231; *United States v. Woods*, 134 S. Ct. 557, 564 (2013). And that's exactly what the IRS did here, holding that the relevant partnership's claim that no asset sale took place between the foreign debt holders and Mr. McNeill was incredible; that Mr. McNeill's true basis in the foreign debt was the

3

modest amount he contributed to the partnerships; and that this tax avoidance scheme merited several million dollars in penalties and interest. *See generally Distressed Asset/Debt Tax Shelters*, 2007 WL 1511543 (I.R.S. Apr. 18, 2007). Under TEFRA, the partnership's "tax matters" partner — the general partner designated for the job or the general partner with the largest profits — is permitted to seek judicial review of the IRS's partnership level determinations. 26 U.S.C. §§ 6226(a), 6231(a)(7). And again that's exactly what happened here. As the tax matters partner, Mr. McNeill filed suit seeking to contest the IRS's partnership level determinations, though the district court eventually dismissed that suit without prejudice on the government's motion and Mr. McNeill never sought to reinstate it.

But that wasn't quite the end of the story. The second step in TEFRA's historically prescribed process remained to unfold. Partnerships are, of course, generally but pass-through entities when it comes to income and taxes: it's not the partnership but the partners themselves who usually pay the taxes. So after deciding a partnership's overall tax liability and penalties TEFRA usually requires the IRS to proceed to issue a tax assessment for each individual partner, one representing his share of the overall partnership assessment, though along the way the IRS may make adjustments it thinks appropriate for individual partners. *Id.* § 6231(a)(6); *Woods*, 134 S. Ct. at 564. In response, each partner is obliged to pay the sum the IRS demands but then, after doing so, he may bring a lawsuit

4

seeking a refund in which he may "assert any partner level defenses." 26 U.S.C. § 6230(c)(1), (c)(4).

That's the step where we find ourselves in this case. The IRS determined that Mr. McNeill's share of the partnership's liability was $7.75 million. Mr. McNeill duly paid that amount in full and then proceeded to file this lawsuit seeking a partial refund. By now proceeding a bit more cautiously with the IRS, Mr. McNeill didn't suggest that the partnership scheme was lawful or that he should be excused the taxes the IRS assessed. Instead, he argued only that he should be excused from the penalties and associated interest the IRS had imposed (about $4.6 million). Mr. McNeill noted that, under TEFRA, a taxpayer may be excused penalties and interest even after pursuing an unsuccessful tax strategy so long as he can prove that he had "reasonable cause" for the position he took and that he filed his tax return in "good faith." *See id.* § 6664(c)(1). And as evidence of reasonable cause and good faith, Mr. McNeill pointed the court to all those accountants and lawyers who offered him letters opining that his tax scheme would meet with the IRS's approval.

But the district court declined to decide the merits of Mr. McNeill's partner level defense. Instead of passing on the question whether Mr. McNeill could prove reasonable cause and good faith for his tax position, the district court held it was precluded from doing so. Not by operation of the judicial doctrines of claim or issue preclusion. The judicial order dismissing the partnership level case

5

expressly indicated that it was without prejudice and no order in that case ever passed on the reasonable cause/good faith question. Neither the district court in its decision nor the government in its brief before us suggests this was sufficient to trigger claim or issue preclusion principles. Instead, the district court held only that TEFRA *itself* — as a matter of statute — precludes a managing partner like Mr. McNeill from pursuing at the partner level a reasonable cause/good faith defense where (as here) the IRS in administrative proceedings has rejected the partnership's assertion of reasonable cause/good faith at the partnership level.

So much, however, we cannot find anywhere in the law. The relevant portion of TEFRA says just this:

> No review of substantive issues.--For purposes of any claim or suit under this subsection, the treatment of partnership items on the partnership return, under the settlement, under the final partnership administrative adjustment, or under the decision of the court (whichever is appropriate) shall be conclusive. In addition, the determination under the final partnership administrative adjustment or under the decision of the court (whichever is appropriate) concerning the applicability of any penalty . . . which relates to an adjustment to a partnership item shall also be conclusive. Notwithstanding the preceding sentence, the partner shall be allowed to assert any partner level defenses that may apply or to challenge the amount of the computational adjustment. *Id.* § 6230(c)(4).

To be sure, the government argues that the second sentence supports the district court's judgment. As the government observes, this language indicates that the IRS's administrative partnership level determinations about penalties and interest "shall . . . be conclusive." And to be conclusive, the government

6

suggests, these determinations must be conclusive not just against the partnership itself but also against the managing partner in any later partner level refund action.

It's an argument that is sound as far as it goes but one that doesn't go quite far enough. It fails to account for the statute's very next and last sentence, which expressly says that "[n]otwithstanding the preceding sentence, the partner shall be allowed to assert any partner level defenses that may apply or to challenge the amount of the computational adjustment." Here, then, Congress pretty clearly seemed to contemplate a regime in which *any* partner may assert *any* "partner level defenses" that may apply. And by statute the reasonable cause/good faith defense appears to be one available at the partner level: after all, it applies when (among other things) the "taxpayer" can show he acted in good faith and (again) under TEFRA it is usually the *partner* who is the *taxpayer*. *Id.* § 6664(c)(1).

The government replies that it is inappropriate to allow *managing* partners to pursue a good faith defense at the partner level when the partnership already raised a good faith defense because often it's the managing partner's good faith that's tested at the partnership level. But even if an arrangement like the government suggests would make some sense, it just isn't the one the statute provides. Nothing in the last sentence of the statute carves out managing partners and prevents them alone from taking advantage of its terms. If Congress had wished to single out managing partners for special treatment, it certainly could

7

have done so — as it has done for other types of partners in other settings. *See, e.g.*, *id.* § 6231(a) (defining tax matters partner, notice partner, pass-thru partner, etc.); *id.* § 6223 (differentiating among them). Its choice not to do the same here deserves our cognizance. Neither, for that matter, is it clear why, if we were to engage in the business of rewriting the statute to carve out managing partners, we would stop there. Why not also carve out tax matters partners who are responsible by statute for litigating partnership level defenses? *See id.* § 6226(a). Or members of committees who signed off on the transaction that resulted in a penalty? Couldn't you make a good case they too should be bound by determinations made in partnership level proceedings? Even the government itself seems unsure of the answer. Before us, the government sometimes suggests managing partners should be carved out, but sometimes suggests tax matters partners should be too. And we confess this vacillation only suggests to us further need for caution about reading into the statute language that just isn't there. For that matter, too, it is not difficult to imagine why Congress might have chosen the very language it did — why it settled on a scheme in which partnership level determinations do not operate to preclude *any* partner (managing, tax matters, etc.) from raising the reasonable cause/good faith defense in partner level proceedings. By way of example only, the material facts underlying the reasonable cause/good faith defense of a managing (or tax matters) partner might well be different (and more compelling) at the partner level than at

8

the partnership level: a law or accounting firm might issue a different opinion letter to the partner than it does to the partnership (as happened in this very case) or issue an opinion letter only to the partner and not to the partnership at all.

What the language of the controlling statute suggests the surrounding statutory environment and the government's own implementing regulations confirm. In TEFRA Congress indicated that "partnership item[s]" are those that the Secretary of the Treasury has deemed "more appropriately determined at the partnership level than at the partner level." *Id.* § 6231(a)(3). And the Secretary's relevant regulations expressly indicate that § 6664(c)(1)'s reasonable cause/good faith defense is *not* a "partnership item" but something more appropriately determined *at the partner level*. *Compare* 26 C.F.R. § 301.6221-1(c) ("Partnership-level determinations include all the legal and factual determinations that underlie the determination of any penalty . . . *other than partner-level defenses specified in paragraph (d) . . . .*" (emphasis added)), *with id.* § 301.6221-1(d) (citing § 6230(c)(4) and noting that § 6664(c)(1)'s reasonable cause and good faith defense is a partner level defense that "*may not be asserted in the partnership-level proceeding*" (emphasis added)). So it seems the government today asks us to adopt a position that's in more than a little tension with the views its own expert agency has expressed on the subject in its authoritative regulations.

9

It's a position that turns out to be in tension, too, with a good bit of judicial precedent, much of it invited by the government. The Supreme Court itself has suggested that under TEFRA a partner's reasonable cause and good faith defense cannot be "conclusively" determined at the partnership level. *Woods*, 134 S. Ct. at 564 ("[T]he partner may nonetheless have acted in good faith with reasonable cause, . . . see § 6664(c)(1). [This issue cannot] be conclusively determined at the partnership level."). And the lower court cases the government attempts to rely upon are perhaps even less helpful to its cause. In *Stobie Creek Investments, LLC v. United States*, 82 Fed. Cl. 636 (2008), the *partnership* argued that "the partnership-level trial should resolve conclusively the reasonable cause defenses of each of the individual partners." *Id.* at 658. Meanwhile, the *government* (consistent with its regulations, of course) contended that the reasonable cause/good faith defense is more properly adjudicated at the partner level — and it prevailed upon the court to agree, for the court proceeded to hold that TEFRA "explicitly disallows adjudication of partner-level defenses" like reasonable cause/good faith "in a partnership-level proceeding." *Id.* Much the same story played out in *Klamath Strategic Investment Fund ex rel. St. Croix Ventures v. United States*, 568 F.3d 537, 548 (5th Cir. 2009), where the *government* again argued that the reasonable cause/good faith defense "is a partner-level defense that can only be asserted in separate refund proceedings." *Id.* at 547. Neither does the government acknowledge its about-face today. Instead, and bypassing

10

that curiosity, it proceeds to observe that courts in these and other related cases have suggested that the reasonable cause/good faith defense "may be a partner- or partnership-level defense, depending on who is asserting it." *Stobie Creek Invs., LLC v. United States*, 608 F.3d 1366, 1380 (Fed. Cir. 2010); *see also Klamath*, 568 F.3d at 548; *Am. Boat Co. v. United States*, 583 F.3d 471, 480 (7th Cir. 2009). But to suggest, as these cases may, that both a partnership and a partner may assert the reasonable cause/good faith defense does not necessarily mean that if the first does so, the second — if he happens to be a managing partner — may not. Certainly nothing in the cases the government cites holds so much.

At the end of the day, the government seems pretty much left to suggest only that its current (if not erstwhile) interpretation of the statute would yield a more efficient process. If partnership level determinations about reasonable cause and good faith were conclusive against (some) partners, it notes, there would be no need for a fact-finder to consider that defense when raised by (those) partners at the partner level. But while we readily admit this arrangement might save labor in some cases, it's not even clear whether it would in all or perhaps even most. For surely in at least some cases the parties would spend much time litigating collateral questions — questions like *who* is bound (really just the managing partner? what about others?) or *what* was conclusively determined in the earlier partnership level proceedings (*this* reasonable cause/good faith argument or another one? or are *all* foregone if not contested at the partnership

11

level?) — that could be avoided by simply focusing the parties on the merits of the defense. Neither, of course and far more importantly, can any claim of efficiency substitute for the statute's text and structure as a basis for discerning statutory meaning.

In saying this much we do not mean to deny that there's often a strong identity of interests between a managing or tax matters partner and a partnership. Neither do we mean to suggest that issues addressed in partnership level proceedings always may be contested by individual partners in partner level proceedings. So, for example, our case doesn't involve the question whether TEFRA would (or could) permit parties to relitigate matters that the doctrine of issue preclusion might otherwise forbid thanks to their final determination in an earlier judicial proceeding by parties with sufficient commonality of interests to qualify as privies. *See Entek GRB, LLC v. Stull Ranches, LLC*, 763 F.3d 1252, 1258 (10th Cir. 2014) (discussing use of offensive issue preclusion against parties and their privies). The only question before us is whether, when no party argues that a final judicial ruling exists that triggers judicial preclusion principles, an adverse decision in a TEFRA administrative partnership level proceeding prevents a managing (or tax matters) partner from pursuing a reasonable cause/good faith defense in later partner level proceedings.

It is not only a narrow question but one of receding importance too, for Congress has recently revamped the process for auditing partnerships in order to

12

permit the IRS, beginning in 2018, to recoup taxes from the partnership itself rather than the partners individually. *See* Bipartisan Budget Act of 2015, Pub. L. No. 114-74, 129 Stat. 584, 625 (to be codified at 26 U.S.C. § 6221). And perhaps that new law will go a long way toward meeting the government's efficiency concerns in future cases. But however that may be, it is not within our charter to apply that new law retroactively to cases like this one, though it does seem a bit like that's what we're effectively being asked to do.

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

No. 15-8095, *McNeill v. United States*

**PHILLIPS**, Circuit Judge, dissenting.

I agree that, in the usual case, adjustments to partnership items concerning penalties announced in a Final Partnership Administrative Adjustment (FPAA) aren't conclusive against partners in partner-level proceedings. This makes sense because TEFRA disallows partners from barging into partnership-level proceedings to assert partner-level defenses. Instead, TEFRA requires partners to await completion of the partnership-level proceedings, and to pay assessed penalties and interest, before asserting partner-level defenses in refund actions.

But this case is an unusual one. Mr. McNeill is no ordinary partner but is Dulwich LLC's managing partner. And Mr. McNeill is also Dulwich's tax-matters partner, which enabled him to have Dulwich sue in Wyoming federal court to oppose adjustments the IRS had made in the Dulwich FPAA. And more unusual yet, Mr. McNeill ultimately allowed Dulwich's challenge to its FPAA's adjustments to be dismissed. TEFRA takes note of those details and imposes consequences. For instance, upon the dismissal of Dulwich's FPAA challenge, the FPAA's findings rise to the level of final and correct findings of the district court itself. Though Mr. McNeill remained free in his penalty-refund action to assert a partner-level defense based on his reasonable cause in pursuing the sham tax scheme, in doing so he faced the FPAA's already-conclusive determination that he hadn't acted with reasonable cause or in good faith. In view of this conclusive determination on his refund action's key question, the district court granted summary

judgment in the government's favor. I agree with the district court's reasoning and would affirm.

Before examining the applicable law, I think it's worth circling back to how this case arose and has made its way to us. In its thorough order, the district court recounts in detail Mr. McNeill's activities leading up to his $7.75 million tax underpayment and $4.59 million assessment for penalties and interest. Soon before participating in the 2002 tax-avoidance activity, Mr. McNeill had served on a board of directors of a corporation that had filed for bankruptcy. There, he dealt with creditors, some of which were distressed-debt investors. Later that year, when Mr. McNeill was set to get an $18 million payout from a company he'd worked for, Mr. McNeill began investigating opportunities to use distressed debt to his advantage. With the help of his attorneys and accountants, Mr. McNeill orchestrated a scheme under which he wrongly claimed about $20 million in losses and correspondingly underpaid his taxes. The district court's order shows Mr. McNeill to be a financially sophisticated person, fully active in the decisions leading to his tax underpayment and penalty.

Even before filing his 2002 tax return and continuing until now, Mr. McNeill has driven this case. This is unsurprising because Mr. McNeill is Dulwich's managing partner and tax-matters partner, and, by the end of 2002, its 98% owner. And, in turn, Dulwich owns 99% of Livrpol LLC, the entity that reported over $22 million in losses from the sale of underwater debt instruments, of which Mr. McNeill ultimately claimed $20 million of the losses. That's how Mr. McNeill set it up.

2

In December 2006, the IRS issued FPAAs for Dulwich and Livrpol. The two FPAAs contained almost-identical findings. The Dulwich FPAA's penalty section included a finding that Dulwich and its partners (obviously including Mr. McNeill) "lacked substantial authority for the positions taken, and that the [sic] they did not have a reasonable belief that those positions were more likely than not the correct treatment of such items." R. vol. 9 at 22. It also included a finding that Dulwich and its partners "did not have reasonable cause and good faith for any of the resulting underpayments." *Id.* In March 2007, Mr. McNeill, as Dulwich's managing partner, filed a petition for readjustment of Dulwich's FPAA in the United States District Court for the District of Wyoming. Importantly, in the Wyoming suit, Mr. McNeill claimed that Dulwich's partners had "reasonably relied on the advice of their tax advisors and legal counsel in good faith." *Id.* at 38.

In May 2008, in the United States District Court for the District of Connecticut, Mr. McNeill (as Dulwich's managing partner) filed a petition for readjustment of Livrpol's FPAA (Dulwich was eligible to do so because Livrpol's tax-matters partner hadn't filed a challenge, 26 U.S.C. § 6226(b)(1)). Because Livrpol was the top-tier entity that sustained the loss, the government moved to dismiss Dulwich's Wyoming suit in favor of Livrpol's Connecticut suit. In response, the Wyoming court stayed Dulwich's suit until the Livrpol suit was finally resolved to see whether that resolution disposed of all the issues in Dulwich's Wyoming suit. After extensive discovery over two years in

Connecticut, Mr. McNeill voluntarily dismissed that suit.[1] After the parties advised the Wyoming court that Mr. McNeill had dismissed the Livrpol suit, the Wyoming court gave Mr. McNeill 60 days in which to reopen the challenge to Dulwich's FPAA. Mr. McNeill chose not to reopen it, leading to the Wyoming court's dismissing it.

In October 2012, Mr. McNeill filed a claim for a refund of his then-paid penalty and interest. In August 2014, after the IRS hadn't responded to the claim, Mr. McNeill filed his present action for a Petition for Refund of Penalties and Interest, asserting as a partner-level defense his alleged reasonable cause and good faith. That put front and center the issue we must now decide: Did the Dulwich FPAA's determinations about Dulwich's lack of reasonable cause and good faith conclusively establish in Mr. McNeill's penalty-refund action his own lack of reasonable cause for his tax activity? The district court said yes. It noted that the Dulwich FPAA's findings became final and correct when Mr. McNeill didn't reopen Dulwich's Wyoming case and allowed its dismissal.[2] And because the Dulwich FPAA rejected the same reasonable-cause defense Mr. McNeill offered in his penalty-refund action, the district court treated the Dulwich FPAA as conclusively establishing Mr. McNeill's own lack of reasonable cause too.

---

[1] Although Mr. McNeill emphasizes that the Connecticut court's dismissal order reserved his ability to pursue partner-level defenses of reasonable cause and good faith, that has little bearing here because Mr. McNeill was not Livrpol's managing partner.

[2] *See* 26 U.S.C. § 6226(h) ("If an action brought under this section is dismissed . . . , the decision of the court dismissing the action shall be considered as its decision that the notice of final partnership administrative adjustment is correct, and an appropriate order shall be entered in the records of the court.").

4

In determining that Dulwich's partnership-level defense based on its reasonable cause for its tax activity must fail, the IRS in its FPAA needed to measure Dulwich's conduct and state of mind.[3] When evaluating a partnership's conduct and state of mind, the federal circuit courts have done so based on the conduct and state of mind of the partnership's managing partner. *See Southgate Master Fund, L.L.C. ex rel. Montgomery Capital Advisors, LLC v. United States*, 659 F.3d 466, 493 n.86 (5th Cir. 2011) ("Where, as here, the reasonable-cause defense is asserted in a partnership-level proceeding, we look to the conduct of the partnership's managing partners in evaluating the reasonableness of the partnership's reporting position."); *Am. Boat Co. v. United States*, 583 F.3d 471, 479–80 (7th Cir. 2009) (concluding that a partnership could raise its own reasonable-cause defense—separate from any partner-level, reasonable-cause defense—based on its managing partner's conduct on the partnership's behalf); *Klamath Strategic Inv. Fund ex rel. St. Croix Ventures v. United States*, 568 F.3d 537, 546–48 (5th Cir. 2009) (allowing a partnership-level reasonable-cause defense as asserted on the partnership's behalf by its managing partners); *Stobie Creek Invs. LLC v. United States*, 608 F.3d 1366, 1381 (Fed. Cir. 2010) (concluding that the partnership could raise a reasonable-cause defense under § 6664(c) "based on the actions of its managing partner").

---

[3] Although the majority is correct that in years past the government has challenged whether partnerships have statutory authority to make their own reasonable-cause defenses, I don't see how that matters. The government lost those arguments, and it's now free to enforce the law as the courts have interpreted it. The parties agree that Dulwich—through its tax-matters partner, Mr. McNeill—had a statutory right to challenge its FPAA on reasonable-cause grounds.

Here, the district court determined that Mr. McNeill's reasonable cause for his tax activity is identical to Dulwich's reasonable cause. Mr. McNeill hasn't contested that. In view of this, I agree with the district court that the Dulwich FPAA's determination that Mr. McNeill lacked reasonable cause for his tax activity is conclusive in Mr. McNeill's later partner-level refund action. I see nothing in 26 U.S.C. § 6230(c)(4) announcing a rule that *all* partner-level defenses automatically fully escape the effects and underpinnings of FPAAs' partnership-level determinations of penalties and interest:

> **(4) No review of substantive issues**
> For purposes of any claim or suit under this subsection, the treatment of partnership items on the partnership return . . . under the final partnership administrative adjustment . . . shall be conclusive. In addition, the determination under the final partnership administrative adjustment . . . concerning the applicability of any penalty . . . which relates to an adjustment to a partnership item shall also be conclusive. Notwithstanding the preceding sentence, the partner shall be allowed to assert any partner level defenses that may apply . . . .

26 U.S.C. § 6230(c)(4). I don't read the third sentence as making the second sentence's conclusive penalty determinations inconclusive for partner-level defenses in penalty-refund actions. Instead, I read the third sentence as ensuring that partners can always bring partner-level defenses subject to any conclusive determinations being applied in those partner-level proceedings. And many times, partners can prevail at the partner level because none of the FPAA's conclusive determinations defeat their partner-level defense. For instance, those partners may not have known or done all that the partnership's managing partner knew and did. And even here, if Mr. McNeill had somehow asserted that his own reasonable-cause defense differed from Dulwich's reasonable-cause defense

6

based on his own conduct and intent, he might still have prevailed despite the conclusive effect TEFRA gives to the FPAA's penalty determinations.

Nor does the TEFRA regulation guarantee all partners an absolute right to assert reasonable-cause defenses in their partner-level refund actions. It does, however, allow partner-level defenses based on reasonable cause if the defenses are personal to the partner and "cannot be determined at the partnership level." 26 C.F.R. § 301.6221-1(d). Here, because the reasonable cause Mr. McNeill asserted for Dulwich and later for himself are the same, Mr. McNeill's partner-level defense based on his reasonable cause for his tax activity could be and *was* determined at the Dulwich partnership level.